IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robin Amy Baker, ) | C/A No. 0:14-4249-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

  This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Robin Amy Baker, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

  Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a "severe" impairment;

(3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)  whether the claimant can perform her past relevant work; and

(5)  whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In September 2011, Baker applied for DIB, alleging disability beginning January 1, 2003.[2] Baker's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 25, 2013, at which Baker, who was represented by Todd J. Johnson, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on April 30, 2013 finding that Baker was not disabled. (Tr. 19-29.)

Baker was born in 1966 and was thirty-eight years old on her date last insured. (Tr. 28.) She has a college education and has past relevant work experience as a registered nurse. (Tr. 131.) Baker alleged disability due to severe depression, anxiety, panic attacks, high blood pressure, sleep apnea, shortness of breath, and weight gain. (Tr. 130.)

In applying the five-step sequential process, the ALJ found that Baker had not engaged in substantial gainful activity during the period from her amended alleged onset date of October 14, 2004 through her date last insured of December 31, 2004. The ALJ also determined that Baker's major depressive disorder and generalized anxiety disorder were severe impairments. However, the ALJ found that, through her date last insured, Baker did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through her date last insured, Baker retained the residual functional capacity to

> perform a full range of work at all exertional levels. However, the claimant was limited to unskilled, low-stress work with no fast-paced production requirement and

---

[2] Baker later amended this date at her hearing before the ALJ to October 14, 2004. (Tr. 43-44.)



> with only occasional changes in the work-setting and occasional decision making. Additionally, the claimant was limited to occasional interaction with the public and coworkers.

(Tr. 23.)  The ALJ found that, through her date last insured, Baker was unable to perform any past relevant work, but that considering Baker's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Baker could have performed.  Therefore, the ALJ found that Baker was not disabled during the relevant time period.

The Appeals Council denied Baker's request for review on October 1, 2014, making the decision of the ALJ the final action of the Commissioner.  (Tr. 2-5.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.



Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Baker raises the following issues for this judicial review:

I. Did the ALJ commit reversible error by failing to accord proper weight to the opinions of the treating/examining physician/RN, Dr. David Steiner and RN, Maria Davidian?

II. Did the ALJ commit reversible error by substituting his "medical" opinion for that which is reserved for medical doctors only?

III. Did the ALJ commit reversible error by failing to consider the side effects of Plaintiff's medications?

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

**A.     Treating Sources**

Baker contends that the ALJ erred in not giving great weight to her treating sources, specifically Dr. David Steiner and R.N. Maria Davidian. (Pl.'s Br., ECF No. 16 at 11-15.) Baker argues that the opinion of a treating source deserves significantly more weight than that of a doctor conducting a records review. (Id. at 13.)

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the



treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5. Although the regulations explicitly apply the above-enumerated factors only to treating sources, those same factors may apply in evaluating opinion evidence from "other sources." SSR 06–03p.



Based on Baker's treatment as of May 2012, Dr. Steiner, Baker's psychiatrist, completed a Mental Residual Functional Capacity Assessment in which he determined that Baker would "be 'off task' 25% of the time when performing the mental activity." (Tr. 524.) Dr. Steiner indicated that Baker was moderately limited in remembering locations and procedures and understanding short, simple instructions, and that Baker was markedly limited in understanding and remembering detailed instructions. He also indicated that Baker was markedly limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining ordinary routine without special supervision, working in coordination with or proximity to others without distraction, and completing a workday without interruptions from psychologically based symptoms. (Tr. 525.) Dr. Steiner opined that Baker would be moderately limited in her ability to interact appropriately with the general public, and markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors. He indicated that Baker was moderately limited in her ability to travel in unfamiliar places and to set realistic goals, and markedly limited in responding appropriately to changes in the work setting. (Tr. 526.)

On March 5, 2013, R.N. Maria Davidian, Baker's nurse at the Center for Behavioral Medicine, completed a Mental Residual Functional Capacity Assessment (Exhibit 16F) and determined that Baker would "be 'off task' 25% of the time when performing the mental activity." (Tr. 533.) Ms. Davidian noted that Baker was markedly limited in remembering locations and procedures, understanding short, simple instructions, and in understanding and remembering detailed instructions. She also indicated that Baker was markedly limited in carrying out instructions, maintaining attention and concentration for extended periods, maintaining regular attendance, sustaining ordinary routine without special supervision, working in coordination with or proximity



to others without distraction, making simple work-related decisions, and completing a workday without interruptions from psychologically based symptoms. (Tr. 534.) She determined that Baker would be moderately limited in her ability to interact appropriately with the general public and in responding to criticism, and markedly limited in her ability to get along with peers and maintaining socially appropriate behavior. Ms. Davidian indicated that Baker was markedly limited in responding appropriately to changes in the work setting, being aware of hazards and taking appropriate precautions, and in her ability to travel in unfamiliar places and to set realistic goals. (Tr. 535.) The March 2013 Mental Residual Functional Capacity Assessment stated that it was based on Baker's condition as of 1999. (Tr. 535.)

In this case, the ALJ gave no treating source controlling weight. The ALJ considered the opinions of Dr. Steiner and Ms. Davidian, but assigned the opinions less than controlling weight. (Tr. 27.) In doing so, the ALJ sufficiently explained his reasoning:

> On May 25, 2012, David Steiner, M.D., the claimant's treating physician, opined that the claimant was capable of carrying out short and simple instructions and maintaining socially appropriate behavior, but she would be off-task more than 25% of the time due to her mental impairments (Exhibit 14F, p. 4). On March 5, 2013, a medical source statement was submitted by the claimant's treating physician, whose name is illegible, indicating that the claimant had marked limitations in her ability to perform even unskilled work and would be off-task 25% of the time secondary to her mental limitations (Exhibit 16F). I afford these opinions little weight as they are not supported by the treatment notes during the relevant time period indicating that the claimant's mood was stable with frequent reports that she was doing well overall (Exhibit 3F). Moreover they are too far removed in time from the date last insured to be probative on the claimant's condition at that time.

(Tr. 27.)

To establish eligibility for Social Security disability benefits, a claimant must show that she became disabled before her date last insured. See 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R.



§§ 404.101(a), 404.131(a). Notably, Dr. Steiner became Baker's treating psychiatrist in 2009 (Tr. 542-43), several years after Baker's date last insured. The ALJ afforded Dr. Steiner's opinion little weight because his 2012 Mental RCF Assessment was too far removed in time from the date last insured to be probative on Baker's condition during the relevant period. An ALJ may discount opinions when they are dated long after the date last insured and are inconsistent with other opinions from the relevant period. See Johnson, 434 F.3d at 656. After reviewing Baker's treatment notes, the ALJ found that the treatment notes did not support Dr. Steiner's opinion. (Tr. 27.)

The only documented records from the relevant time period include Baker's two visits to Ms. Davidian at the Center for Behavioral Medicine. As set forth in his decision, the ALJ properly considered those records:

> On October 14, 2004, the claimant presented for a follow-up appointment at Center for Behavioral Medicine and reported that she was doing fair, but she had been crying a lot. She was breastfeeding her baby, which had created some depression. A mental status examination revealed claimant was alert and oriented, her mood was depressed and her affect was anxious, but she had no unusual thoughts or perceptions and no suicidal or homicidal ideation. The claimant's medications were adjusted (Exhibit 3F, p. 25). On December 8, 2004, the claimant presented for a follow-up appointment and reported that she was feeling very emotional and had not been sleeping well. It was noted that this could be the cause of some of her anxiety and stress. Medication changes were discussed and the claimant voiced concern that there would not be a medication that would work for her. A mental status examination revealed the claimant was alert and oriented with no unusual thoughts or perceptions, no suicidal or homicidal ideation, her affect was good and her mood was stable. The claimant was to start bi-weekly therapy (Exhibit 3F, p. 26).

(Tr. 25.)

To more thoroughly understand Baker's severe impairments, the ALJ also reviewed historical information. Specifically, the ALJ noted:

> Treatment notes from the Center for Behavioral Medicine indicate that the claimant was doing well and looking for a job change on January 7, 2002; she was doing well



> in June 2002 and in December 2002, the claimant's depression was noted as under control (Exhibit 3F, pp. 1, 10, 16). On May 27, 2003, the claimant indicated that she was feeling mildly anxious and obsessive, but in October 2003, she was noted as doing very well, with the exception of some sleep issues (Exhibit 3F, pp. 19, 22). In April 2004, the claimant was doing fine, with some depression, but in July 2004, she reported that she was doing ok and was not feeling down (Exhibit 3F, pp. 23, 24). Mental status examinations during this time period prior to the amended alleged onset date were essentially benign, indicating that the claimant was alert and oriented, with no unusual thoughts or perceptions, no suicidal or homicidal ideation, and she had a stable mood and good affect (Exhibit 3).

(Tr. 24.) Although not directly cited in the ALJ's decision, Ms. Davidian's 2002 treatment notes further indicated: on January 21, Baker was doing okay, working weekends but tired and felt flat; on February 4, Baker was okay, no ups and downs, but tired because she worked all weekend; on February 20, Baker was very tired; on March 18, Baker was sleeping through night, not feeling disassociated; on April 15, Baker was fine; and on April 29, Baker was doing much better. (Tr. 222-37.) Ms. Davidian's 2002 records also noted: on June 3, Baker was doing okay but feeling "yucky" due to period; on June 24, Baker was feeling good; on July 29, Baker was doing very well; on September 3, Baker was doing very well; on September 30, Baker was feeling a little down and had more obsessive thoughts; on November 13, Baker was doing fine; on November 26, Baker's anxiety was under control; and on December 9, Baker's depression was under control. (Id.)

Ms. Davidian's 2003 treatment notes, also not specifically referenced by the ALJ, stated that: on January 8, Baker was doing good but tired; on May 7, things were going well; on June 11, Baker was anxious and wanted to induce labor; and on September 25, Baker was doing very well. (Tr. 238-43.) Ms. Davidian's 2004 notes, prior to the alleged onset date, stated: on April 6, Baker was doing fine; on July 19, Baker was okay, she had been better, but she was not "down in dumps." (Tr. 224-45.) As referenced by the ALJ, the mental status examinations during the 2002 through 2004 time

period found Baker was alert and oriented, with no unusual thoughts or perceptions, no suicidal or homicidal ideation, and Baker had stable mood and good affect. (Tr. 222-45.)

Additionally, the ALJ correctly considered the medical evidence from outside the relevant time period. See Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 345 (4th Cir. 2012) (finding that consideration of medical evidence outside of the relevant time is period proper when such evidence may be "reflective of a possible earlier and progressive degeneration"); see also Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985) (evidence should not be disregarded merely because an evaluation occurred outside the relevant time period so long as it may be relevant to prove a disability during the relevant time period). The ALJ cited Ms. Davidian's January 12, 2005 findings, which stated that Baker was much better and was sleeping better. (Tr. 25.) Although the ALJ did not directly reference Ms. Davidian's January 26, 2005 note, stating that Baker reported losing interest in life but was not suicidal, he did acknowledge Ms. Davidian's February 9, 2005 note that Baker was a little better, not as teary as before. (Tr. 25.) The ALJ further referenced Ms. Davidian's March 16, 2005 note in which Baker indicated she was feeling better, and she was going out in the evenings. (Tr. 25.) Last, the ALJ cited Ms. Davidian's April 5, 2005 note that stated Baker reported she was doing okay and had experienced significant improvement with Cymbalta. (Tr. 25; see also Tr. 248-59.)

The ALJ concluded that the medical evidence did not support a finding of disability within the meaning of the regulations. The court finds that the ALJ properly assigned Dr. Steiner's opinion less than controlling weight because the Mental Residual Functional Capacity Assessment completed by Dr. Steiner referred to Baker's condition in 2012, some eight years after Baker's date last inured, and was not indicative of Baker's 2004 condition as documented by Ms. Davidian's contemporaneous treatment notes. The ALJ correctly noted that Dr. Steiner's opinion was



inconsistent with Ms. Davidian's notes from the relevant time period. Substantial evidence supports the ALJ's decision to afford lesser weight to the opinion of Dr. Steiner, a decision properly explained by the ALJ.

      Baker also argues that the ALJ failed to make the appropriate analysis to determine the weight given to Ms. Davidian's opinion. (Pl.'s Br., ECF No. 16 at 11-15.) The court finds no error in the ALJ's decision to afford Ms. Davidian's opinion less than controlling weight because she does not qualify as a treating physician entitled to controlling weight. Under the regulations, only an "acceptable medical source" may qualify as a treating source that offers an opinion entitled to controlling weight. SSR 06-03p. Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. 20 C.F.R. § 404.1527(a). The regulations do not include nurses such as Ms. Davidian in the list of acceptable medical sources. Id. The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physicians' assistants or therapists. 20 C.F.R. § 404.1513(d). However, these non-acceptable medical sources do not command controlling weight in the same manner as acceptable medical sources. Id. And, the reviewing court should leave untouched an ALJ's decision regarding weight afforded a medical opinion unless the ALJ failed to give sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d). In the instant case, the ALJ provided sufficient reasoning for affording Ms. Davidian's opinion little weight. As stated above, the ALJ explained that Ms. Davidian's 2013 Mental Residual Functional Capacity Assessment was not supported by her own treatment notes prepared during the relevant time period. (Tr. 27.) Specifically, as cited above, Ms. Davidian's mental status examinations from the relevant time period revealed that Baker's affect was good and her mood stable. (Tr. 247.)



In sum, the court finds that Baker has not shown that the ALJ's decision with regard to the medical opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

**B.    Medical Opinion**

Baker's claim that the ALJ substituted his own medical opinion for the opinions of medical experts is not persuasive.  Clearly, it is error for an ALJ to substitute his medical judgment for that of a physician.  See e.g., Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (holding that the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who submitted an opinion to or testified before him") (internal quotations omitted).  However, as discussed in the preceding claim, there was no treating physician's opinion on record relevant to the period in question on which the ALJ could rely and to whom the ALJ was required to give deference.  Instead, the ALJ had to choose between conflicting medical opinions about the extent of Baker's disabilities.  See e.g., Turner v. Astrue, 390 F. App'x 581, 584-85 (7th Cir. 2010) (finding that the ALJ did not substitute his opinion for those of medical experts where the doctors' opinions conflicted regarding MRI).

The consultative examiners' opinions supported the ALJ's findings. (Tr. 72-74.)  Timothy Latkis, Ph.D., SSA Medical Consultant, reviewed Baker's file in March 2012 and opined that Baker did not have any severe impairments. (Tr. 72.)  Dr. Latkis further noted that there was insufficient



evidence to assess the level of restriction of activities of daily living, social functioning, concentration, persistence, or pace, and whether Baker experienced repeated episodes of decompensation, each of extended duration. (Tr. 72.) Dr. Latkis found that there was "[n]o functional evidence during [date last insured] period." (Tr. 73.) Dr. Latkis opined that Baker was not disabled within the meaning of the Act. (Tr. 74.) In May 2012, Leslie Burke, Ph.D., Agency Consultant, reviewed Baker's file and concurred with Dr. Latkis's conclusion that Baker was not disabled within the meaning of the Act. (Tr. 84.) The court finds that the ALJ did not substitute his own medical opinion for that of medical experts. Instead, the ALJ properly assessed Baker's residual functional capacity ("RFC") after thoroughly reviewing the record, and the ALJ's assessment is supported by substantial record evidence, including the opinions of the state agency consultants. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (finding that the testimony of a non-examining physician can constitute substantial evidence when it is consistent with the record); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. §§ 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence").

    **C.**    **Medication Side Effects**

Finally, Baker argues that the ALJ failed to properly consider her medication-related side effects. (Pl.'s Br., ECF No. 16 at 16-18.) The Commissioner asserts that Baker's argument is without merit because there is no evidence that medication-related side effects caused work-preclusive limitations during the relevant period, or necessitated a further reduction in Baker's RFC. (Def.'s Br., ECF No. 18 at 17-18.) The court agrees.

Baker testified at the April 25, 2013 administrative hearing that in 2004, she was taking Seroquel, Zoloft, and Prozac, and that her medications and medication dosages changed frequently. (Tr. 54-55.) Baker also testified that the side effects she experienced on Seroquel included insomnia and drowsiness. (Id.) She further testified that while she did not recall Zoloft having bad side effects, she stopped taking the medication because it was not working well. (Id.)

In his decision, the ALJ noted the appropriate regulations of 20 C.F.R. § 404.1529 and SSR 96-7p with respect to considering Baker's RFC, and noted that he considered all the evidence of record. (Tr. 24.) The ALJ concluded:

> [C]onsidering the criteria enumerated in the Regulations, Rulings and case law for evaluating the claimant's subjective complaints, the claimant's medical evidence was not persuasive to establish an inability to perform the range of work assessed herein between October 14, 2004 and December 31, 2004, her date last insured. The location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as, precipitating and aggravating factors and side effects of medications, are adequately addressed and accommodated in the above residual functional capacity.

(Tr. 27.) The ALJ did not mention or discuss specifically Baker's alleged side effects from her medications.

Here, the record may indeed show that Baker's medications caused the alleged side effects, and that her medications were frequently changed by Ms. Davidian. (Tr. 222-59.) Nevertheless,



despite Baker's allegations of insomnia, drowsiness, and difficulties with concentration and memory, the record does not support any functional limitations resulting from the side effects of her medications. Since Baker has not established any significant functional limitations resulting from any of her medications, the court concludes that any error the ALJ may have committed in not addressing explicitly the side effects from medications is harmless. See Johnson, 434 F.3d at 658 (citing Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.")). Because such serious functional limitations are not found in the record, the court finds that the ALJ's credibility analysis is supported by substantial evidence and application of the correct legal standards. The ALJ considered all the evidence of record before reaching his conclusion, and included only those limitations which he found to be supported by the record. Further, the ALJ did not completely discount Baker's allegations and limitations. Instead, the ALJ accounted for such limitations by restricting Baker to a less arduous RFC. Accordingly, the ALJ's decision should be affirmed in this regard.

**ORDER**

For the foregoing reasons, the court finds that Baker has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 9, 2016
Columbia, South Carolina